**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION AT CLEVELAND**

| | |
|---|---|
| **MICHAEL F. ABFALL,** individually, and on behalf of all others similarly situated, 34175 Detroit Road Avon, OH 44011-1962 | Case No. |
| Plaintiff, | **CLASS ACTION COMPLAINT FOR DAMAGES** |
| v. | **JURY DEMAND ENDORSED HEREON** |
| **PHH MORTGAGE CORPORATION d.b.a. PHH MORTGAGE SERVICES,** c/o Corporation Service Company 50 West Broad Street, Suite 1330 Columbus, OH 43215 | |
| Defendant. | |

Plaintiff Michael F. Abfall, individually, and on behalf of all others similarly situated, by and through counsel, brings this action against Defendant PHH Mortgage Corporation d.b.a. PHH Mortgage Services, and states as follows for his Class Action Complaint:

**PARTIES, JURISDICTION, AND VENUE**

1.      Plaintiff Michael F. Abfall ("Plaintiff" or "Abfall") is a natural person residing in Lorain County, Ohio.

2.      Defendant PHH Mortgage Corporation d.b.a. PHH Mortgage Services ("Defendant" or "PHH") is a foreign corporation incorporated under the laws of the State of New Jersey that maintains its headquarters and principal place of business at 1 Mortgage Way, Mount Laurel, NJ 08054.

3.      PHH does business in the state of Ohio and is licensed to do business in the state of Ohio as a foreign corporation.

4.    This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331, as this action arises under the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601, *et seq.* ("RESPA") and the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, *et seq.* ("FDCPA")

5.    This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 to hear the state law claims brought under the Ohio Residential Mortgage Licensing Act ("RMLA")—codified at R.C. 1322.01, *et seq.*—and under common law for breach of contract.

6.    Venue lies in this District pursuant to 28 U.S.C. § 1391(b), as a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District.

## STATEMENT OF FACTS

### *Plaintiff's and Late Fee Class Members' Loans*

7.    PHH is the servicer of Plaintiff's and Late Fee Class (defined *infra*) members' notes, and mortgages on real property that secure those notes (collectively, the "loans").

8.    As a mortgage loan servicer, PHH—on behalf of the assignees, investors, and/or owners to whom payments towards the loans are ultimately due—regularly attempts to secure payments on customers' mortgage loans, including Plaintiff's and Late Fee Class members' loans.

9.    On information and belief, Plaintiff's and Late Fee Class members' loans contain substantially similar language, as they were drafted using standardized templates, specifically, the "Uniform Instruments" required by the Federal National Mortgage Association ("Fannie Mae") and the Federal Home Loan Mortgage Corporation ("Freddie Mac") and otherwise commonly used by lenders in the origination of mortgages.

10.    When PHH acquired the servicing rights to Plaintiff's loan and FDCPA Subclass (defined *infra*) members' loans, Plaintiff and FDCPA Subclass members were in default of their obligations thereunder.

11.     PHH is a "debt collector" as defined by 15 U.S.C. § 1692a(6), as it regularly engages, or attempts to engage, in the collection of "debts", and it regularly collects debts owed or due, or asserted to be owed or due, to another for which the primary purpose is for personal, family, or household use, including Plaintiff's and Late Fee Class members' loans.

12.     PHH, is a mortgage servicer, as defined by R.C. 1322.01(AA), as it is an entity that "for itself or on behalf of the holder of a mortgage loan, holds the servicing rights, records mortgage payments on its books, or performs other functions to carry out the mortgage holder's obligations or rights under the mortgage agreement including, when applicable, the receipt of funds from the mortgagor to be held in escrow for payment of real estate taxes and insurance premiums and the distribution of such funds to the taxing authority and insurance company."

13.     PHH, as a mortgage servicer, is required to be registered with the Ohio Department of Commerce, Division of Financial Institutions under R.C. 1322.

14.     PHH is a registrant under R.C. 1322, as the Ohio Department of Commerce, Division of Financial Institutions has issued it certificates of registration, License Nos. RM.804016.000, RM.804016.016-BR, RM.804016.018-BR, RM.804016.021-BR, RM.804016.024-BR, and RM.804016.025-BR. R.C. 1322.01(GG).

15.     Plaintiff and each member of the Ohio Late Fee Subclass and the Ohio Inquiry Subclass (both defined *infra*) is a "buyer" as defined by R.C.1322.01(H), as each is an individual whose loan is serviced by a mortgage servicer, PHH.

16.     Pursuant to the terms of Plaintiff's and Late Fee Class members' loans, Plaintiff and Late Fee Class members are (or were) required to make periodic, monthly installment payments on their loans until the entire balance is paid in full. *See*, note for Plaintiff's loan ("Plaintiff's Note"), ¶ 3, attached hereto as **Exhibit 1**; *see also*, a copy of Plaintiff's mortgage

("Plaintiff's Mortgage"), attached as **Exhibit 2**, ¶ N.  Plaintiff's and Class members' loans specifically refer to these periodic installment payments as "monthly payments." *See, e.g.*, Plaintiff's Note, ¶¶ 3, 6.

17.     Plaintiff's and Late Fee Class members' loans further provide that if any "monthly payment" is not paid within a certain number of days after it is due, Plaintiff and Class members will be required to pay a "late charge." *See*, Plaintiff's Note, ¶ 6(A); *see also*, Plaintiff's Mortgage, ¶ 1.

18.     Pursuant to the terms of Plaintiff's and Late Fee Class members' loans, if Plaintiff and Class members fail to timely make each required "monthly payment," they will be in default on their loans. *See*, Plaintiff's Note, ¶ 6(B). Plaintiff's and Late Fee Class members' loans further provide that if they are in default, the "Note Holder"—*e.g.*, the current owner of the loan, or the servicer of the loan (on behalf of the current owner of the loan)—may send them written notice that if they do not pay the delinquent balance of their respective loans by a certain date, the Note Holder may require them to immediately pay the full balance of their respective loans—*i.e.*, Plaintiff's and Late Fee Class members' loans would be "accelerated." *See*, Plaintiff's Note, ¶ 6(C); *see also*, Plaintiff's Mortgage, ¶ 22.

19.     Based on the plain terms of Plaintiff's and Late Fee Class members' loans, Plaintiff and Late Fee Class members are (or were) no longer required to make "monthly payments" on their loans after acceleration. Indeed, acceleration, by definition, requires a borrower to pay the *entire balance* of a loan *immediately*, instead of in preset installment amounts made at regularly scheduled and predetermined intervals. *Compare*, Plaintiff's Note, ¶ 6(C) (describing Plaintiff's payment obligations after acceleration) *with* Plaintiff's Note, ¶ 3 (describing Plaintiff's "monthly payment" obligations).

20.     As noted, *supra*, the terms of Plaintiff's and Late Fee Class members' loans establish that the condition precedent to the imposition of "late charges" is the failure to comply with their "monthly payment" obligations. *See*, Plaintiff's Note, ¶ 6(A). However, after acceleration, that condition precedent can no longer occur because Plaintiff's and Late Fee Class members' obligation to make "monthly payments" ceases. Therefore, Plaintiff's and Late Fee Class members' loans *do not* authorize the imposition of "late charges" after acceleration.

### PHH's Improper Imposition of Late Charges

21.     At some point during the time relevant to this action, Plaintiff's and Late Fee Class members' loans were each in default due to their failure to timely remit periodic "monthly payments" on their loans. *See*, Plaintiff's Note, ¶ 6(B).

22.     In compliance with the terms of Plaintiff's and Late Fee Class members' loans, the assignees, investors, owners and/or servicers of the loans, sent notices of default to Plaintiff and Late Fee Class members stating that if Plaintiff and Late Fee Class members did not pay all overdue amounts, they would require Plaintiff and Late Fee Class members to immediately pay the full amount of unpaid principal and all the interest owed on such amount—*i.e.*, Plaintiff's and Late Fee Class members' loans would be "accelerated." *See*, Plaintiff's Note, ¶ 6(C).

23.     After receiving the notices of default, Plaintiff and Late Fee Class members did not remit further payments on their loans. As a result, the assignees, investors, owners and/or servicers of the loans, accelerated Plaintiff's and Class members' loans. *See*, Plaintiff's Note, ¶ 6(C).

24.     For the reasons set forth *supra*, at the time Plaintiff's and Late Fee Class members' loans were accelerated, their obligation to remit timely periodic "monthly payments" on their loans ceased, as they were instead required to *immediately* pay the *entire balance* of their loans. *See*, Plaintiff's Note, ¶ 6(C).

25.     Since Plaintiff and Late Fee Class members no longer had the obligation to remit timely periodic "monthly payments" on their loans, the condition precedent relative to the imposition of "late charges"—*i.e.*, the failure to timely remit "monthly payments"—did not, and could not, exist.

26.     Nevertheless, PHH—acting on its own behalf, and on behalf of the assignees, investors, and/or owners of such loans—continued to impose "late charges" against Plaintiff and Late Fee Class members (the "Improper Late Fees"). For the reasons stated above, these Improper Late Fees were not authorized by the terms of the loans or otherwise by law.

27.     PHH's imposition of Improper Late Fees is part of a pattern and practice of behavior.

### *The Harm to Plaintiff and Late Fee Class Members*

28.     PHH's actions described hereon harmed Plaintiff and Late Fee Class members in several ways, as specified *infra*.

29.     PHH, acting on its own behalf or on behalf of the assignees, investors, and/or owners of Plaintiff's and Late Fee Class members' loans, breached the terms of the loans by imposing Improper Late Fees. PHH, acting on its own behalf or on behalf of the assignees, investors, and/or owners of such loans, has asserted, and will continue to assert, that these Improper Late Fees are amounts due and owing pursuant to the terms of Plaintiff's and Late Fee Class members' loans, and that these debts are valid. As such, PHH has collected, and will continue to collect (or attempt to collect) these Improper Late Fees through mortgage servicing, debt collection activities, foreclosures (and deficiency judgments), claims in bankruptcy proceedings, etc.

30.     Because of the claims for Improper Late Fees, some Late Fee Class members reasonably believed that they were required to pay the Improper Late Fees, and, as a result, paid

those Improper Late Fees (either directly or indirectly) as part of reinstatement, payoff refinancing

their loans, by accepting a loan modification, in foreclosure, or in bankruptcy proceedings.  These

payments were made under the mistaken belief that the Improper Late Fees were, in fact, proper.

These payments were also paid under duress. Indeed, any reasonable borrower would feel

compelled to pay the Improper Late Fees when faced with a choice between (1) paying the

Improper Late Fees—a relatively small amount of money in comparison to the outstanding balance

of his/her loan—to reinstate his/her loan, or (2) permanently losing his/her home through

foreclosure.

### *RESPA and Regulation X*

31.     Congress enacted RESPA, in part, to ensure "that consumers throughout the nation

are provided with greater and timelier information on the nature and costs of the settlement process

and are protected from unnecessarily high settlement charges caused by abusive practices that have

developed in some areas of the country." 12 U.S.C. § 2601(a). Since "Congress intended RESPA

to serve consumer-protection purposes[,] RESPA's provisions relating to loan servicing

procedures should be 'construed liberally' to serve the statute's remedial purpose." *Medrano v.*

*Flagstar Bank, FSB*, 704 F.3d 661, 665-666 (9th Cir. 2012) (citations omitted).

32.     RESPA was amended through the Dodd-Frank Wall Street Reform and Consumer

Protection Act—Public Law No. 111-203, 124 Stat. 1376 (2010)—in part to add 12 U.S.C. §

2605(k) which imposed further obligations on servicers.

33.     As amended, it is a violation of RESPA for a servicer to "fail to take timely action

to respond to a borrower's requests to correct errors relating to allocation of payments, final

balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's

duties."  12 U.S.C. § 2605(k)(1)(C).

34.     Further, RESPA, as amended, requires servicers to respond to inquiries from borrowers seeking the identity and contact information of the owner or assignee of borrowers' mortgage loans within ten (10) business days. 12 U.S.C. § 2605(k)(1)(D).

35.     In January 2013, pursuant to the authority granted by the Dodd-Frank Wall Street Reform and Consumer Protection Act—Public Law No. 111-203, 124 Stat. 1376 (2010)—the Consumer Finance Protection Bureau ("CFPB") issued a number of final rules concerning mortgage markets in the United States—known as "Regulation X" and codified as 12 C.F.R. § 1024.1, *et seq.*  Regulation X became effective on January 10, 2014.

36.     Regulation X further expanded servicers' obligations under RESPA because RESPA, as amended, makes it unlawful for a servicer to "fail to comply with any other obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of this chapter." 12 U.S.C. § 2605(k)(1)(E).

37.     Regulation X also imposed requirements upon servicers in responding to two new categories of correspondence from borrowers related to their mortgage loans; specifically, Requests for Information ("RFIs") and Notices of Error ("NOEs").  "The CFPB has made this clear in its official interpretation of the regulations: 'A qualified written request is just one form that a written notice of error or information request may take. Thus, the error resolution and information request requirements in §§ 1024.35 and 1024.36 apply as set forth in those sections irrespective of whether the servicer receives a qualified written request.' 12 C.F.R. § 1024, Supp. I."  *E.g.*, *Messina v. Green Tree Servicing, LLC*, 210 F.Supp.3d 992, 1007 (N.D. Ill. 2016).

38.     Relative to RFIs, Regulation X provides that "a servicer shall comply with the requirements of this section for any written request for information from a borrower that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage

loan account, and states the information the borrower is requesting with respect to the borrower's mortgage loan." 12 C.F.R. § 1024.36(a).

39.     12 C.F.R. § 1024.36(d)(1) provides that a servicer must respond to an RFI by either "[p]roviding the borrower with the requested information and contact information, including a telephone number, for further assistance in writing" or "[c]onducting a reasonable search for the requested information and providing the borrower with a written notification that states that the servicer has determined that the requested information is not available to the servicer, provides the basis for the servicer's determination, and provides contact information, including a telephone number, for further assistance."

40.     12 C.F.R. § 1024.36(d)(2)(i)(A) provides that a servicer must respond to an RFI requesting the "identity of, and address or other relevant contact information for, the owner or assignee of a mortgage loan" "not later than 10 days (excluding legal public holidays, Saturdays, and Sundays)" after receipt.

41.     The CFPB issued Official Interpretations to Regulation X, Supplement I to Part 1024 (the "Interpretations"). In relation to requests seeking the "identity of, and address or other relevant contact information for, the owner or assignee of a mortgage loan", the CFPB issued the following interpretation expressly providing the requirements for a proper response:

> 2.  Owner or assignee of a mortgage loan.
>
> i.  When a loan is not held in a trust for which an appointed trustee receives payments on behalf of the trust, a servicer complies with § 1024.36(d) by responding to a request for information regarding the owner or assignee of a mortgage loan by identifying the person on whose behalf the servicer receives payments from the borrower. A servicer is not the owner or assignee for purposes of § 1024.36(d) if the servicer holds title to the loan, or title is assigned to the servicer, solely for the administrative convenience of the servicer in servicing the mortgage loan obligation. The

Government National Mortgage Association is not the owner or assignee for purposes of such requests for information solely as a result of its role as the guarantor of the security in which the loan serves as the collateral.

ii. When the loan is held in a trust for which an appointed trustee receives payments on behalf of the trust, *a servicer complies with § 1024.36(d) by responding to a borrower's request for information regarding the owner, assignee, or trust of the mortgage loan with the following information, as applicable*:

A. For any request for information where the Federal National Mortgage Association or the Federal Home Loan Mortgage Corporation is not the owner of the loan or the trustee of the securitization trust in which the loan is held: *The name of the trust, and the name, address, and appropriate contact information for the trustee. Assume, for example, a mortgage loan is owned by Mortgage Loan Trust, Series ABC-1, for which XYZ Trust Company is the trustee. The servicer complies with § 1024.36(d) by identifying the owner as Mortgage Loan Trust, Series ABC-1, and providing the name, address, and appropriate contact information for XYZ Trust Company as the trustee.*

B. If the request for information did not expressly request the name or number of the trust or pool and the Federal National Mortgage Association or the Federal Home Loan Mortgage Corporation is the owner of the loan or the trustee of the securitization trust in which the loan is held: The name and contact information for the Federal National Mortgage Association or the Federal Home Loan Mortgage Corporation, as applicable, without also providing the name of the trust.

C. If the request for information did expressly request the name or number of the trust or pool and the Federal National Mortgage Association or the Federal Home Loan Mortgage Corporation is the owner of the loan or the trustee of the securitization trust in which the loan is held: *The name of the trust, and the name, address, and appropriate contact information for the trustee, as in comment 36(a)-2.ii.A above.*

Supplement I to Part 1024 (emphasis added).

42.     Importantly, unlike "qualified written requests" submitted pursuant to 12 U.S.C. § 2605(e), RFIs do not need to relate directly to "servicing" to trigger the duties under Regulation X.  The CFPB specifically addressed the "servicing" issue in its commentary on 12 C.F.R. § 1024.36(f): "While the final rule does not require that servicers undertake the information request procedures in § 1024.36(c) and (d) for oral submissions, *it does not limit information requests to those related to servicing*." 78 F.R. 10696, 10761 (emphasis added). Therefore, a servicer is required to respond to "any written request for information," and the scope of 12 C.F.R. § 1024.36(a) is not limited to "requests relating to servicing."  *E.g.*, *Pollack v. Seterus, Inc.*, Civil Action No. 17-60475-Civ, 2017 U.S. Dist. LEXIS 202827, at *8-9 (S.D. Fla. Dec. 7, 2017); *St. Claire v. Ditech Fin. LLC*, No. 1:17-CV-03370-AT-JFK, 2018 U.S. Dist. LEXIS 219661, at *11 (N.D. Ga. Sept. 21, 2018).

43.     Relative to NOEs, Regulation X provides that "[a] servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred." 12 C.F.R. § 1024.35(a).

44.     12 C.F.R. § 1024.35(e)(1) provides that a servicer must respond to an NOE by either "[c]orrecting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a phone number, for further assistance" or "[c]onducting a reasonable investigation and providing the borrower with written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its

determination, information regarding how the borrower can request such documents, and contact information, including a phone number, for further assistance."

### *Plaintiff's and RESPA Class Members' Loans*

45.     PHH is a mortgage "servicer" as that term is defined by 12 C.F.R. § 1024.2(b) and 12 U.S.C. § 2605(k). PHH is the current servicer of Plaintiff's and RESPA Class (defined *infra*) members' loans.

46.     Plaintiff's and RESPA Class members' loans are each a "federally related mortgage loan" as defined by RESPA and Regulation X. 12 U.S.C. § 2602(1); 12 C.F.R. § 1024.2(b).

47.     PHH is subject to the requirements of RESPA and Regulation X and does not qualify for the exceptions for "small servicers"—as defined by 12 C.F.R. § 1026.41(e)(4)—or "qualified lender[s]"—as defined by 12 C.F.R. § 617.7000.

48.     At all times relevant, Plaintiff's and RESPA Class members' loans were owned or held by securitized trusts ("Trusts") which were the *actual* owners or assignees of their loans.

49.     Plaintiff and RESPA Class members each submitted one or more requests—as defined by 1024.36(a) and/or otherwise falling within the purview of 12 U.S.C. §§ 2605(k)(1)— seeking the identity and contact information of the owner or assignee of their loans from PHH (the "Inquiries").

50.     Plaintiff and RESPA Class members each submitted their Inquiries to PHH at the address, email address, and/or facsimile number PHH designated for receipt of NOEs and RFIs, pursuant to 12 C.F.R. § 1024.35(c) and 12 C.F.R. § 1024.36(d), respectively (the "Designated Address").

51. As noted above, RESPA, Regulation X, and the Official Interpretations required PHH to identify the *owner* of Plaintiff's and RESPA Class members' loans—*i.e.*, the Trusts—by name in response to the Inquiries.

52. However, PHH failed to properly and fully identify the *owner* of Plaintiff's and RESPA Class members' loans—*i.e.*, the Trusts—in response to the Inquiries as expressly required by RESPA, Regulation X, and the Official Interpretations. Specifically, in response to each of the Inquiries, PHH provided Plaintiff and RESPA Class members with the name and contact information for the entity that acted as the "trustee" of the Trust but failed to identify the Trust itself.

53. Therefore, PHH failed to provide adequate written responses to Plaintiff's and RESPA Class members' Inquiries as required by 12 C.F.R. § 1024.36(d) and 12 U.S.C. § 2605(k)(1)(D).

54. As a result of PHH's failure to comply with RESPA and Regulation X, Plaintiff and RESPA Class members were each harmed because they incurred the expenses associated with sending their Inquiries—such as their time, postage, etc.—but they did not receive the information to which they were legally entitled under RESPA and Regulation X. Indeed, because PHH "failed to do that which it was obligated to do [under RESPA]" the time and expense associated with Plaintiff's and RESPA Class members' submission of the Inquiries to PHH "metamorphosed into damages." *Marais v. Chase Home Fin., LLC*, 24 F.Supp.3d 712, 728 (S.D. Ohio 2014); *Justice v. Ocwen Loan Servicing*, 2015 WL 235738, at *19 (S.D. Ohio 2015); *McMillen v. Resurgent Capital Services, L.P.*, 2015 WL 5308236, at *10 (S.D. Ohio 2015); *Dale v. Selene Fin. LP*, 2016 WL 6024580, at *3 (N.D. Ohio 2016).

55. Subsequently, Plaintiff and certain RESPA Class members—*i.e.*, members of the NOE Subclass (defined below)—sent NOEs to PHH concerning PHH's insufficient responses to their initial Inquiries.

56. Had PHH adequately responded to Plaintiff's and NOE Subclass members' Inquiries, Plaintiff and NOE Subclass members would not have needed to send NOEs regarding PHH's failure to comply with its obligations under RESPA and Regulation X. As such, Plaintiff and NOE Subclass members were further harmed by PHH's failure to adequately respond to their Inquiries, as it required them to incur the expenses associated with sending these subsequent NOEs—such as their time, postage, etc.

57. PHH's practice of failing to provide substantive responses to Inquiries is part of a sustained pattern and practice of noncompliance with RESPA and Regulation X.  Indeed, PHH's response to Plaintiff's Inquiry (defined *infra*) appears to be part of a form letter used for all similarly situated borrowers. For example, Plaintiff's counsel has received several of these insufficient responses from PHH relative to other clients of Plaintiff's counsel during the past year. Specifically, Plaintiff's counsel has received insufficient responses from PHH and sent NOEs regarding the same to PHH for at least four (4) clients with mortgaged properties in the state of Ohio and at least three (3) clients with mortgaged properties in the state of New Jersey.

58. Because many homeowners sending Inquiries are involved in defending against foreclosure or are seeking information related to available loss mitigation options, this conduct is extremely detrimental as it deprives these homeowners from having full knowledge of the entity to whom their obligations are ultimately owed or the loss mitigation options to which they would be eligible for review.

59.     Plaintiff and RESPA Class members are asserting claims for relief against PHH for breach of the duties owed to them, pursuant to 12 U.S.C. §§ 2605(k)(1) and 12 C.F.R. § 1024.36.

60.     Plaintiff and RESPA Class members have a private right of action, pursuant to 12 U.S.C. § 2605(f), for the claimed breaches, and RESPA provides for remedies including actual damages, costs, statutory damages, and attorneys' fees.

## FACTS RELEVANT TO PLAINTIFF

### As Related to the Late Fee Class

61.     On July 29, 2005, Plaintiff entered a mortgage loan with non-party Ameriquest Mortgage Company, which was secured by a mortgage on Plaintiff's principal place of residence. *See*, Plaintiff's Note, ¶ 1; *see generally*, Plaintiff's Mortgage. The terms of that loan were subsequently modified via an agreement between Plaintiff and non-party American Home Mortgage Servicing, Inc. *See*, Loan Modification Agreement and Security Retention Agreement (the "2010 Modification"), attached as **Exhibit 3**.

62.     PHH currently services Plaintiff's loan on behalf of the assignee of Plaintiff's loan, non-party Deutsche Bank National Trust Company, as Trustee for Ameriquest Mortgage Securities Inc., Asset-Backed Pass-Through Certificates, Series 2006-R9 ("Deutsche"), pursuant to a contractual agreement between PHH and Deutsche.

63.     Pursuant to the terms of Plaintiff's loan, Plaintiff was required to make periodic, "monthly payments" of principal and interest in the amount dictated by the step-rate payment schedule in the 2010 Modification until the entire balance was paid in full. *See*, Plaintiff's Note, ¶ 3; *see also*, the 2010 Modification, ¶ 4. Each of Plaintiff's "monthly payments" was due on the first day of each month beginning on October 1, 2005. *See*, Plaintiff's Note, ¶ 3(B).

64.     Plaintiff's loan further provided that if any "monthly payment" was not paid within 15 days after becoming due, Plaintiff would be required to pay a "late charge" in the amount of 5.000% of the overdue "monthly payment" amount—that is, $39.56 as of October 1, 2017. *See*, Plaintiff's Note, ¶ 6(A); *see also*, the 2010 Modification, ¶ 4.

65.     Pursuant to the terms of Plaintiff's loan, if Plaintiff failed to timely make each required "monthly payment," Plaintiff would be in default on the loan. *See*, Plaintiff's Note, ¶ 6(B). Plaintiff's loan further provided that if he were in default, the Note Holder may send Plaintiff written notice that if he did not pay the delinquent balance by a certain date, his loan would be accelerated. *See*, Plaintiff's Note, ¶ 6(C); Plaintiff's Mortgage, ¶ 22.

66.     Plaintiff failed to make his "monthly payments" on his loan in January 2019 and thereafter. As such, Plaintiff was in default on his loan beginning on January 1, 2019. *See*, Plaintiff's Note, ¶ 6(B) (stating that if Plaintiff "do[es] not pay the full amount of each monthly payment on the date it is due, [Plaintiff] will be in default").

67.     The prior servicer of Plaintiff's loan, Ocwen Loan Servicing, LLC ("Ocwen") subsequently sent Plaintiff correspondence dated February 27, 2019 stating that Plaintiff was in default on his loan, and that he was required to pay the delinquent balance, plus "late charges," by a specified "Cure Date"—April 5, 2019 (the "Default Letter"). *See*, the Default Letter, attached as **Exhibit 4**.

68.     The Default Letter also stated that Plaintiff's failure to pay the delinquent balance, plus "late charges," by the Cure Date may result in acceleration of Plaintiff's loan and the commencement of foreclosure proceedings. *See*, Exhibit 4.

69.     Plaintiff did not make any further payments on his loan after receiving the Default Letter, and the assignee, investor, owner and/or servicer of Plaintiff's loan accelerated Plaintiff's loan.

70.     Servicing rights to Plaintiff's loan transferred from Ocwen to PHH effective June 1, 2019. Plaintiff's loan was in default at the time servicing rights transferred to PHH.

71.     On or about November 12, 2019, the assignee of Plaintiff's loan, Deutsche filed a foreclosure action against Plaintiff in the Lorain Court of Common Pleas captioned *Deutsche Bank Nat'l Trust Co. v. Michael F. Abfall, et al.*, Case No. 19CV199815 (the "Foreclosure Action").

72.     Based on the plain terms of Plaintiff's loan, Plaintiff was no longer required to make "monthly payments" on his loan after it was accelerated. *Compare Plaintiff's* Note, ¶ 6(C) (describing Plaintiff's payment obligations after acceleration) *with* Plaintiff's Note, ¶ 3 (describing Plaintiff's "monthly payment" obligations).

73.     PHH obtained servicing rights to Plaintiff's loan when Plaintiff was still in default, meaning that Plaintiff had no obligation to make "monthly payments" under the terms of his loan. Therefore, PHH—acting on behalf of Deutsche—had no right to collect "monthly payments" from Plaintiff relative to his loan upon obtaining servicing rights to his loan.

74.     As noted *supra*, Plaintiff's loan only authorized the imposition of "late charges" in the event that Plaintiff failed to make a required "monthly payment." *See*, Plaintiff's Note, ¶ 6(A). Because Plaintiff's obligation to make "monthly payments" on his loan ceased after it was accelerated, PHH—acting on behalf of Deutsche—had no authority to impose "late charges" against Plaintiff.

75.     On October 14, 2020, PHH—acting on behalf of Deutsche—sent Plaintiff a "Loan Payoff Statement" which contained a payoff amount for Plaintiff's loan good through November

12, 2020 in the amount of $51,953.59, including $354.15 in "Unpaid Late Charges". *See*, Plaintiff's Payoff Statement, attached as **Exhibit 5**.

76. On October 22, 2020, PHH provided an itemization of fees imposed against Plaintiff and his loan (the "Fee Itemization") through which PHH identified that in addition to late fees totaling $235.47 that were transferred from the prior servicer, PHH imposed late fees, each in the amount of $39.56 on September 16, 2019, August 17, 2020, and September 16, 2020. *See*, a copy of the Fee Itemization, attached as **Exhibit 6**.

77. The $354.15 in "Unpaid Late Charges" in Plaintiff's Payoff Statement contained the three (3) late fees totaling $118.68 that PHH imposed after obtaining servicing rights to Plaintiff's loan.

78. Based on the plain terms of Plaintiff's loan, since PHH obtained servicing rights to Plaintiff's loan when it was in default and it had remained in default as of PHH's sending of Plaintiff's Payoff Statement, PHH had no authority to impose any of these late fees totaling $118.68.

79. Plaintiff and Deutsche entered into a "LOAN MODIFICATION AGREEMENT" effective January 1, 2021 (the "2021 Modification"). *See*, a copy of the executed Modification, attached as **Exhibit 7**.

80. Per the terms of the 2021 Modification, "Unpaid Amounts" totaling $10,317.11 were capitalized onto the unpaid principal balance of Plaintiff's loan with the modified principal balance of the loan totaling $49,370.47. *See*, Exhibit 7.

81. PHH did not provide any explanation as to the breakdown of the amounts comprising the "Unpaid Amounts." *See*, Exhibit 7. However, as explained below, and on information and belief, these "Unpaid Amounts" consisted, in part, of Improper Late Fees.

82.     PHH sent Plaintiff a periodic billing statement for the loan for the payment due April 1, 2021 (the "Mortgage Statement"). *See*, a copy of the Mortgage Statement, attached as **Exhibit 8**.

83.     The Mortgage Statement identified the transactions posted to Plaintiff's loan from February 26, 2021 through March 9, 2021, which included the transactions for the onboarding of the 2021 Modification. *See*, Exhibit 8.

84.     As reflected on the Mortgage Statement (Exhibit 8), on March 8, 2021, a number of transactions were posted to Plaintiff's loan representing the onboarding of the 2021 Modification and reflecting the amounts capitalized onto the unpaid principal balance of the loan through the 2021 Modification which specifically included $354.15 in "Fees & Shortages", which equals the amount claimed to be due and owing for "Unpaid Late Charges" in the Payoff Statement, and which included the amount due and owing for three (3) Improper Late Fees.

85.     In total, PHH imposed at least three (3) Improper Late Fees to Plaintiff's loan and capitalized each of these Improper Late Fees onto the modified principal balance of his loan upon which he will incur and need to pay interest at a rate of 2.875%.

86.     That is, not only has PHH effectively charged Plaintiff for $118.68 in Improper Late Fees, but PHH has done so in such a manner to force Plaintiff to pay interest on the Improper Late Fees.

87.     Upon PHH's onboarding of the 2021 Modification on or about March 8, 2021, the default on Plaintiff's loan was cured and the Foreclosure Action was dismissed on or about April 1, 2021.

### *As Related to the RESPA Class*

88.     Plaintiff's loan is owned by or is otherwise a part of a mortgage-backed security (*i.e.*, a Trust) named Ameriquest Mortgage Securities Inc., Asset-Backed Pass-Through Certificates, Series 2006-R9 ("Ameriquest").  Ameriquest is the Trust that is the actual owner or investor of Plaintiff's loan.

89.     Plaintiff, through counsel, sent an Inquiry dated September 23, 2020 to PHH via certified mail to the Designated Address (the "Abfall Inquiry"). *See*, the Abfall Inquiry, attached as **Exhibit 9**.  The Abfall Inquiry contained a request for the "identity, address, and other relevant contact information about the owner or assignee of the loan" as contemplated by 12 U.S.C. § 2605(k)(1)(D) and 12 C.F.R. § 1024.36(d)(2)(i)(A).

90.     On or about October 9, 2020, PHH sent a response (the "Abfall Inquiry Response") to Plaintiff's counsel stating that the "investor details" relative to Plaintiff's loan were:

> Deutsche Bank Ntl Trst Co
> 1761 East St Andrew Place
> Santa Ana, CA 92705
> Phone: 714.2247.6000

*See*, the Abfall Inquiry Response, attached as **Exhibit 10**.

91.     The entity PHH identified as the owner or investor of Plaintiff's loan—"Deutsche Bank Ntl Trst Co"—is not the actual owner or investor of Plaintiff's loan, but rather merely the trustee that collects payment on behalf of the actual owner or investor—Ameriquest.

92.     Accordingly, the Abfall Inquiry Response was insufficient to comply with 12 U.S.C. § 2605(k)(1)(D) and 12 C.F.R. § 1024.36(d), as it failed to identify the Trust on behalf of which "Deutsche Bank Ntl Trst Co" collects payments as expressly required under the Interpretations.

93.     Since Plaintiff did not receive the information requested through the Abfall Inquiry, on November 24, 2020, Plaintiff, through counsel, sent an NOE to PHH via certified mail to the Designated Address (the "Abfall NOE"). *See*, the Abfall NOE, attached as **Exhibit11**.

94.     Plaintiff was harmed by PHH's failure to respond to the Abfall Inquiry because he incurred costs relative to sending the Abfall Inquiry—such as postage and attorneys' fees—but did not receive the information to which he was legally entitled pursuant to RESPA and Regulation X. Indeed, as noted *supra*, when PHH "failed to do that which it was obligated to do [under RESPA]" in response to the Abfall Inquiry, the time and expense associated with Plaintiff's submission of the Abfall Inquiry "metamorphosed into damages." *E.g.*, *Marais*, 24 F.Supp.3d at 728.

95.     Had PHH properly responded to the Abfall Inquiry, Plaintiff would not have needed to send the Abfall NOE to obtain the information to which he was legally entitled.

96.     Plaintiff was therefore also harmed by PHH's failure to respond to the Abfall Inquiry because Plaintiff incurred costs relative to sending the Abfall NOE that he would not otherwise have incurred—such as postage and attorneys' fees—had PHH properly responded to the Abfall Inquiry.

## CLASS ACTION ALLEGATIONS

97.     **Late Fee Class Definition**: Plaintiff brings this action pursuant to Fed. R. Civ. P. 23 on behalf of a class of similarly situated individuals and entities (the "Late Fee Class"), defined as follows:

> All loan borrowers in United States, during the applicable statute of limitations period, (1) who have mortgage loans secured by residential real property, (2) whose mortgage loans did not provide for the imposition of late fees or charges after acceleration of their mortgage loans, (3) against whom late fees or charges were imposed or demanded after acceleration of their mortgage loans, and (4)

whose mortgage loans were serviced by PHH at any point after their mortgage loans were accelerated.

Excluded from the Late Fee Class are: (1) Defendant, Defendant's agents, subsidiaries, parents, successors, predecessors, and any entity in which Defendant or their parents have a controlling interest, and those entities' current and former employees, officers, and directors; (2) the Judge to whom this case is assigned and the Judge's immediate family; (3) any person who executes and files a timely request for exclusion from the Late Fee Class; (4) any persons who have had their claims in this matter finally adjudicated and/or otherwise released; and (5) the legal representatives, successors and assigns of any such excluded person.

98.     **FDCPA Subclass Definition**: Plaintiff also brings this action pursuant to Fed. R.

Civ. P. 23 on behalf of a subclass of similarly situated individuals and entities ("the FDCPA

Subclass"), defined as follows:

All loan borrowers in United States, during the applicable statute of limitations period, (1) who have mortgage loans secured by residential real property to which PHH acquired servicing rights after the loans were in default, (2) whose mortgage loans did not provide for the imposition of late fees or charges after acceleration of their mortgage loans, (3) against whom late fees or charges were imposed or demanded after acceleration of their mortgage loans, and (4) whose mortgage loans were serviced by PHH at any point after their mortgage loans were accelerated.

Excluded from the FDCPA Subclass are: (1) Defendant, Defendant's agents, subsidiaries, parents, successors, predecessors, and any entity in which Defendant or their parents have a controlling interest, and those entities' current and former employees, officers, and directors; (2) the Judge to whom this case is assigned and the Judge's immediate family; (3) any person who executes and files a timely request for exclusion from the FDCPA Subclass; (4) any persons who have had their claims in this matter finally adjudicated and/or otherwise released; and (5) the legal representatives, successors and assigns of any such excluded person.

99.     **Ohio Late Fee Subclass Definition:** Plaintiff also brings this action pursuant to

Fed. R. Civ. P. 23 on behalf of a subclass of similarly situated individuals and entities ("the Ohio

Late Fee Subclass"), defined as follows:

All loan borrowers in United States, during the applicable statute of limitations period, (1) who have mortgage loans secured by residential real property located in the State of Ohio, (2) whose mortgage loans did not provide for the imposition of late fees or charges after acceleration of their mortgage loans, (3) against whom late fees or charges were imposed or demanded after acceleration of their mortgage loans, and (4) whose mortgage loans were serviced by PHH at any point after their mortgage loans were accelerated.

Excluded from the Ohio Late Fee Subclass are: (1) Defendant, Defendant's agents, subsidiaries, parents, successors, predecessors, and any entity in which Defendant or their parents have a controlling interest, and those entities' current and former employees, officers, and directors; (2) the Judge to whom this case is assigned and the Judge's immediate family; (3) any person who executes and files a timely request for exclusion from the Ohio Late Fee Subclass; (4) any persons who have had their claims in this matter finally adjudicated and/or otherwise released; and (5) the legal representatives, successors and assigns of any such excluded person.

100.     **RESPA Class Definition**: Plaintiff brings this action pursuant to Fed. R. Civ. P. 23 on behalf of a class of similarly situated individuals and entities (the "RESPA Class"), defined as follows:

All loan borrowers in the United States (1) who have loans for which a securitized trust or pool is the owner or investor, (2) whose loans are serviced by PHH, (3) who submitted to PHH an Inquiry seeking the information about the owner or assignee of their loans, and (4) to whom PHH did not identify the securitized trust or pool that was the owner of their loans in response to such Inquiry.

Excluded from the RESPA Class are: (1) Defendant, Defendant's agents, subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest, and those entities' current and former employees, officers, and directors; (2) the Judge to whom this case is assigned and the Judge's immediate family; (3) any person who executes and files a timely request for exclusion from the RESPA Class; (4) any persons who have had their claims in this matter finally adjudicated and/or otherwise released; (5) the legal representatives, successors and assigns of any such excluded person; and (6) any person whose Inquiry did not expressly request the name or number of the securitized trust or pool, *and* the Federal National Mortgage Association or the Federal Home Loan Mortgage Corporation was

the owner of the loan or the trustee of the securitization trust in which the loan was held.

101.    **NOE Subclass Definition**: Plaintiff also brings this action pursuant to Fed. R. Civ. P. 23 on behalf of a subclass of similarly situated individuals and entities (the "NOE Subclass"), defined as follows:

> All loan borrowers in the United States (1) who have loans for which a securitized trust or pool is the owner or investor, (2) whose loans are serviced by PHH, (3) who submitted to PHH an Inquiry seeking the information about the owner or assignee of their loans, (4) to whom PHH did not identify the securitized trust or pool that was the owner of their loans in response to such Inquiry, and (5) who sent an NOE to PHH regarding PHH's response to their Inquiry.

> Excluded from the NOE Subclass are: (1) Defendant, Defendant's agents, subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest, and those entities' current and former employees, officers, and directors; (2) the Judge to whom this case is assigned and the Judge's immediate family; (3) any person who executes and files a timely request for exclusion from the NOE Subclass; (4) any persons who have had their claims in this matter finally adjudicated and/or otherwise released; (5) the legal representatives, successors and assigns of any such excluded person; and (6) any person whose Inquiry did not expressly request the name or number of the securitized trust or pool, *and* the Federal National Mortgage Association or the Federal Home Loan Mortgage Corporation was the owner of the loan or the trustee of the securitization trust in which the loan was held.

102.    **Ohio Inquiry Subclass Definition**: Plaintiff also brings this action pursuant to Fed. R. Civ. P. 23 on behalf of a subclass of similarly situated individuals and entities (the "Ohio Inquiry Subclass"), defined as follows:

> All loan borrowers in United States, during the applicable statute of limitations period, (1) who have mortgage loans secured by residential real property located in the State of Ohio, (2) who have loans for which a securitized trust or pool is the owner or investor, (3) whose loans are serviced by PHH, (4) who submitted to PHH an Inquiry seeking the information about the owner or assignee of their loans, and (5) to whom PHH did not identify the securitized trust or pool that was the owner of their loans in response to such Inquiry.

Excluded from the Ohio Inquiry Subclass are: (1) Defendant, Defendant's agents, subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest, and those entities' current and former employees, officers, and directors; (2) the Judge to whom this case is assigned and the Judge's immediate family; (3) any person who executes and files a timely request for exclusion from the Ohio Inquiry Subclass; (4) any persons who have had their claims in this matter finally adjudicated and/or otherwise released; (5) the legal representatives, successors and assigns of any such excluded person; and (6) any person whose Inquiry did not expressly request the name or number of the securitized trust or pool, *and* the Federal National Mortgage Association or the Federal Home Loan Mortgage Corporation was the owner of the loan or the trustee of the securitization trust in which the loan was held.

103. **Numerosity and Ascertainability**: Upon information and belief, the Late Fee Class and the RESPA Class (collectively, the "Classes") are each comprised of more than forty (40) members, such that the Classes are so numerous that joinder of all members is impractical. This conclusion is reasonable because as of March 31, 2020, Ocwen, the parent company of PHH, "serviced approximately $200 billion in unpaid principal balance ("UPB") of forward residential mortgages." Moreover, due to the availability of mortgage-related assistance through the CARES Act and similar programs arising out of the COVID-19 pandemic depending primarily upon the owner or investor of borrowers' individual loans, it is expected that a higher percentage of borrowers than would be typical are seeking information as to the owner or investor of their loans through their mortgage loan services. The exact number of members in the Classes is presently unknown and can only be ascertained through discovery. Class members can easily be identified through Defendant's records or by other means.

104. **Commonality and Predominance:** There are questions of law and fact common to the proposed Classes that predominate over any individual questions. As to the Late Fee Class, simply put, Defendant imposed Improper Late Fees against Plaintiff and Late Fee Class members, and Plaintiff and Late Fee Class members were harmed as a result. Similarly, all members of the

RESPA Class have been subject to and affected by a uniform course of conduct; specifically, PHH refusing or otherwise failing to provide a proper response to borrowers' Inquiries by failing to identify the securitized trust or pool that is the owner or investor of their loans. There are questions of law and fact common to each of the proposed Classes that predominate over any individual questions, including:

    a.   Whether the terms of Plaintiff's and Late Fee Class members' loans permitted PPH to impose late fees after their loans were accelerated;

    b.   Whether the late fees imposed by PHH against Plaintiff and Late Fee Class members were proper;

    c.   Whether PHH's imposition of Improper Late Fees amounted to a breach of contract;

    d.   Whether PHH's imposition of Improper Late Fees violated the FDCPA;

    e.   Whether PHH's imposition of Improper Late Fees violated the RMLA;

    f.   Whether PHH's responses to Plaintiff's and RESPA Class members' Inquiries failed to comply with the requirements of RESPA and Regulation X;

    g.   Whether PHH's failures to properly respond to Plaintiff's and RESPA Class members' Inquiries were part of a sustained pattern and practice of noncompliance with RESPA and Regulation X;

    h.   Whether Plaintiff and members of the Classes suffered actual damages, and the measure and amount of those damages; and,

    i.   Whether Plaintiff and members of the Classes are entitled to recover statutory damages and/or punitive damages, as well as their attorneys' fees and costs incurred in connection with this action.

105. **Typicality**: Plaintiff's claims are typical of the claims of the Classes and related subclasses. On information and belief, Plaintiff's and Late Fee Class members' loans contain substantially similar language, as they were drafted using standardized templates or uniform instruments common to all loans and are intended or planned to be assigned to, or subsequently owned by, government sponsored entities such as Fannie Mae or Freddie Mac, or contain substantially similar language to such documents. As such, Plaintiff and Late Fee Class members were subjected to and affected by a uniform course of conduct; specifically, Defendant's imposition of Improper Late Fees. Plaintiff and RESPA Class members were denied a substantive response to which they were entitled because Defendant unlawfully failed to identify the *owner* of Plaintiff's and RESPA Class members' loans—*i.e.*, the Trusts—by name, and Plaintiff and RESPA Class members incurred damages as a result.

106. **Adequacy**: Plaintiff will adequately represent the interests of the Classes and does not have adverse interests to the Classes. Plaintiff's counsel has extensive experience litigating consumer class actions.

107. **Superiority**: A class action is the superior method for the quick and efficient adjudication of this controversy. If individual members of the Classes prosecuted separate actions, it may create a risk of inconsistent or varying judgments that would establish incompatible standards of conduct. This is particularly true due to the fact that PHH has acted on grounds that apply generally to the Classes, such that final injunctive and declaratory relief is appropriate respecting the Classes as a whole. Moreover, given the relatively small amount of damages available to Plaintiff and members of the Classes, adjudication on a classwide basis would provide members of the Classes with a remedy that they may be unlikely to pursue individually.

## COUNT I
### Declaratory Judgment
### (28 U.S.C. §§ 2201, *et seq.*)
### (On behalf of Plaintiff and the Late Fee Class)

108.    Plaintiff repeats and realleges paragraphs 1 through 107 with the same force and effect as though fully set forth herein.

109.    At all relevant times, there was in effect the Declaratory Judgment Act, 28 U.S.C. §2201(a), which states, in relevant part:

> In a case of actual controversy within its jurisdiction…any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

110.    Plaintiff, individually, and on behalf of the Late Fee Class, seeks an order declaring that Plaintiff's and Late Fee Class members' loans do *not* authorize the imposition of late fees after acceleration.

111.    The controversies presented in this case are definite and concrete and affect the adverse legal interests of the parties. Plaintiff and Late Fee Class members contend that, pursuant to the terms of their loans, Defendant is legally unable to impose late fees after acceleration. In contrast, Defendant has repeatedly contended that it may legally impose Improper Late Fees. Accordingly, this case will determine the legal scope of Defendant's obligations to Plaintiff and Late Fee Class members.

112.    There is an actual controversy between the parties of sufficient immediacy and reality to warrant the issuance of a declaratory judgment because Defendant has imposed, and will continue to impose, Improper Late Fees. Defendant has sent Plaintiff and Late Fee Class members payoff statements and monthly statements indicating its intent to collect these amounts and has

sought to collect these amounts through foreclosure proceedings, bankruptcy proceedings, and through other methods. Notwithstanding Defendant's attempt to collect these Improper Late Fees, Plaintiff and members of the Late Fee Class assert that they have no legal obligation to pay them because they are unauthorized pursuant to the terms of their loans.

113.    If the Court were to deny Plaintiff's and Late Fee Class members' request for declaratory relief, this controversy will continue to exist, as Defendant will continue to attempt to collect Improper Late Fees—whether through reinstatement, refinancing, loan modifications, foreclosure, during bankruptcy proceedings, etc.—and Plaintiff and Late Fee Class members will continue to assert that these amounts are unauthorized pursuant to the terms of their loans. As such, the resolution of this controversy is contingent upon the declaration requested herein, and because Defendant refuses to fulfill its legal obligations to Plaintiff and the Late Fee Class.

114.    Based on the foregoing facts, the Court should declare the rights and other legal remedies pursuant to the terms of Plaintiff's and Late Fee Class members' loans.

### COUNT II
### Breach of Contract
### (On behalf of Plaintiff and the Late Fee Class)

115.    Plaintiff repeats and realleges paragraphs 1 through 107 with the same force and effect as though fully set forth herein.

116.    Plaintiff's and Late Fee Class members' loans are legally binding and enforceable contracts with PHH.

117.    Pursuant to the terms of Plaintiff's and Late Fee Class members' loans, PHH is not authorized to impose late fees after acceleration of those loans.

118.     In breach of its contractual obligations under the terms of Plaintiff's and Late Fee Class members' loans, PHH imposed Improper Late Fees against Plaintiff and Late Fee Class members.

119.     Plaintiff and Late Fee Class members have been harmed by PHH's breach, as they have already paid, or will soon be required to pay, the Improper Late Fees in connection with reinstatement, refinancing, loan modifications, foreclosure, during bankruptcy proceedings, etc.

## COUNT III
### Violation of the FDCPA, 15 U.S.C. §§ 1692e and 1692f
### (On behalf of Plaintiff and the FDCPA Subclass)

120.     Plaintiff repeats and realleges paragraphs 1 through 107 with the same force and effect as though fully set forth herein.

121.     The FDCPA makes it an illegal, "unfair practice" for a debt collector to undertake "the collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1).

122.     "The [FDCPA] is an extraordinarily broad statute and must be construed accordingly" so it would be anomalous to conclude that "any amount" fails to encompass the Improper Late Fees. *See*, *Stratton v. Portfolio Recovery Assocs, LLC*, 770 F.3d 443, 449 (6th Cir. 2014) (internal citations omitted).

123.     The Improper Late Fees that PHH has imposed against and collected or attempted to collect from Plaintiff and FDCPA Subclass members are not authorized by the terms of their loans or otherwise by law.

124.     As the Improper Late Fees imposed by PHH are not authorized by the contract or any provision of law, their collection violates 15 U.S.C. § 1692f.

125.    The FDCPA makes it illegal for a debt collector to misrepresent "the character, amount, or legal status of any debt." 15 U.S.C. § 1692e(2).

126.    By demanding the Improper Late Fees through periodic billing statements, payoff statements, and other means, PHH has misrepresented the amounts due and owing in relation to Plaintiff's and the FDCPA Subclass members' loans in violation of 15 U.S.C. § 1692f.

127.    As a result of PHH's actions, PHH is liable to Plaintiff and FDCPA Subclass members for actual damages, statutory damages, costs, and attorneys' fees. 15 U.S.C. § 1692k.

**COUNT IV**
**Violation of the RMLA, R.C. 1322.01, *et seq.***
**(On behalf of Plaintiff and the Ohio Late Fee Subclass)**

128.    Plaintiff repeats and realleges paragraphs 1 through 107 with the same force and effect as though fully set forth herein.

129.    "No person ... shall act as a … mortgage servicer … without first having obtained a certificate of registration from the superintendent of financial institutions for the principal office and every branch office to be maintained by the person for the transaction of business as a … mortgage servicer ... in this state." R.C. 1322.07(A).

130.    PHH, as a mortgage servicer, is required to be registered with the Ohio Department of Commerce, Division of Financial Institutions under R.C. 1322.

131.    PHH is a registrant under R.C. 1322, as the Ohio Department of Commerce, Division of Financial Institutions has issued it certificates of registration, License Nos. RM.804016.000, RM.804016.016-BR, RM.804016.018-BR, RM.804016.021-BR, RM.804016.024-BR, and RM.804016.025-BR. R.C. 1322.01(GG).

132.    PHH's conduct, in imposing and collecting the Improper Late Fees, is in violation of R.C. 1322.40(C) as it is conduct that constitutes improper, fraudulent, or dishonest dealings.

133.    PHH's conduct caused Plaintiff and Ohio Late Fee Subclass members to suffer actual damages, as further described, *supra*.

134.    As a result of PHH's conduct, PHH is liable to Plaintiff and Ohio Late Fee Subclass members for actual damages, as further described, *supra*, reasonable attorneys' fees and costs incurred in connection with this action, and punitive damages. R.C. 1322.52.

135.    A registrant, licensee, or person required to be registered or licensed under R.C. 1322, *et seq.*, is required to comply with all duties imposed by other statutes or common law and:

> (3) Act with reasonable skill, care, and diligence; [and]
>
> (4) Act in good faith and with fair dealing in any transaction, practice, or course of business in connection with the brokering or originating of any residential mortgage loan[.]

R.C. 1322.45(A).

136.    A registrant, licensee, or person required to be registered or licensed under R.C. 1322 cannot waive or modify its duties under R.C. 1322.45(A). R.C. 1322.45(C).

137.    PHH's conduct, in imposing and collecting the Improper Late Fees, is in violation of R.C. 1322.45(A)(3)-(4).

138.    As a result of PHH's conduct, PHH is liable to Plaintiff and Ohio Late Fee Subclass members for actual damages, as further described, *supra*, reasonable attorneys' fees and costs incurred in connection with this action, and punitive damages. R.C. 1322.45(D).

139.    Moreover, pursuant to R.C. 1322.52(B)(1), Plaintiff, individually, and on behalf of the Ohio Late Fee Subclass, seeks an order enjoining PHH from charging Improper Late Fees in the future.  Plaintiff's request for injunctive relief is appropriate for the reasons set forth below.

140.    Although no (reasonable) mortgagor plans on defaulting on a mortgage loan, studies indicate that mortgagors who have previously defaulted on mortgage loans are at an

increased risk of falling into default in the future.[1]  This is particularly true relative to mortgagors who have previously received loan modifications, as those mortgage loans are characterized by "lower borrower credit scores, higher origination [loan-to-value ratios] and borrower [debt-to-income ratios], and were much more likely to be adjustable rate mortgages than those mortgages that" were not modified.[2]

141.    Plaintiff and members of the Ohio Late Fee Subclass fall into one or both of these categories, as they all previously defaulted on their loans—which led to the imposition of Improper Late Fees—and many received one or more loan modifications—such as Plaintiff, whose loan was modified twice.  *See*, 2010 Modification, Exhibit 3; 2021 Modification, Exhibit 7.  Moreover, although Plaintiff's default was cured as a result of the 2021 Modification, many Ohio Late Fee Subclass members may still be in default on their loans.

142.    Accordingly, Plaintiff and members of the Ohio Late Fee Subclass are at a substantially increased risk of defaulting on their loans in the future, or are currently in default on their loans.

143.    Plaintiff's and Ohio Late Fee Subclass members' loans are currently serviced by PHH, and will continue to be serviced by PHH in the future.

144.    As mortgagors relative to loans that will continued to be serviced by PHH, and who are at a substantially increased risk of defaulting on their loans in the future, Plaintiff and Ohio Late Fee Subclass members are at risk of being subjected to Improper Late Fees in the future.

---

[1] *See, e.g.*, Ambrose, et al., *The Hazard Rates of First and Second Default*, available at: https://realestate.wharton.upenn.edu/wp-content/uploads/2017/03/301.pdf.
[2] *See, e.g.*, Federal Reserve Bank of New York, *Second Chances: Subprime Mortgage Modification and Re-Default*, available at: https://www.newyorkfed.org/medialibrary/media/research/staff_reports/sr417.pdf.

145.    Therefore, the Court should enter an order enjoining PHH from charging Improper Late Fees.

## COUNT V
**(Violations of 12 U.S.C. §§ 2605(k)(1)(C) and (E), and 12 C.F.R. § 1024.36)**
**(On behalf of Plaintiff, the RESPA Class, and the NOE Subclass)**

146.    Plaintiff repeats and realleges paragraphs 1 through 107 with the same force and effect as though fully set forth herein.

147.    Plaintiff and RESPA Class members submitted Inquiries to PHH at the Designated Address.

148.    Plaintiff's and RESPA Class members' Inquiries requested specific information related to their loans, specifically, the identity and contact information of the owner or assignee of their loans from PHH, as contemplated by, *inter alia*, 12 C.F.R. § 1024.36 and/or 12 U.S.C. § 2605(k)(1).

149.    PHH failed to properly, or otherwise fully, identify the owner of Plaintiff's and RESPA Class members' loans in response to the Inquiries as expressly required by RESPA, Regulation X, and the Interpretations. Specifically, in response to each of the Inquiries, PHH provided the name and contact information for the entity that acted as the "trustee" of the Trust that was the *actual* owner or assignee of the loan, but failed to identify the Trust itself by name.

150.    PHH failed to provide an adequate written response to Plaintiff's and RESPA Class members' Inquiries within ten (10) business days of receipt at the Designated Address—as required by 12 C.F.R. § 1024.36(d) and 12 U.S.C. § 2605(k)(1).

151.    PHH's failure to provide appropriate responses to Plaintiff's and RESPA Class members' Inquiries within ten (10) business days of receipt constitutes a clear violation of the requirements of 12 C.F.R. § 1024.36 and 12 U.S.C. § 2605(k)(1).

152.    Plaintiff and RESPA Class members were harmed because they incurred the expenses associated with sending Inquiries—such as their time, postage, etc.—but did not receive the information or responses to which they were legally entitled, pursuant to RESPA and Regulation X.

153.    Plaintiff and NOE Subclass members were further harmed by PHH's failure to appropriately respond to the Inquiries because they each incurred costs relative to sending an NOE that they would not otherwise have incurred—such as postage and attorneys' fees—had PHH properly responded to their Inquiries.

154.    PHH is evading its legal obligations and has effectively stripped borrowers of their right to submit Inquiries within and subject to the protective framework of RESPA, as PHH engaged in a pattern and practice of behavior of providing incomplete, evasive, or inaccurate information in response to such Inquiries.

155.    PHH's actions are in continuation of a pattern and practice of behavior in conscious disregard of the Plaintiff's and RESPA Class members' rights.

156.    As a result of PHH's actions, PHH is liable to Plaintiff and RESPA Class members for actual damages, statutory damages, costs, and attorneys' fees. 12 U.S.C. §§ 2605(f)(2)-(3).

**COUNT VI**
**Violation of the RMLA, R.C. 1322.01, *et seq.***
**(On behalf of Plaintiff and the Ohio Inquiry Subclass)**

157.    Plaintiff repeats and realleges paragraphs 1 through 107 with the same force and effect as though fully set forth herein.

158.    "No person ... shall act as a … mortgage servicer … without first having obtained a certificate of registration from the superintendent of financial institutions for the principal office

and every branch office to be maintained by the person for the transaction of business as a …

mortgage servicer ... in this state." R.C. 1322.07(A).

159.    PHH, as a mortgage servicer, is required to be registered with the Ohio Department

of Commerce, Division of Financial Institutions under R.C. 1322.

160.    PHH is a registrant under R.C. 1322, as the Ohio Department of Commerce,

Division of Financial Institutions has issued it certificates of registration, License Nos.

RM.804016.000,    RM.804016.016-BR,    RM.804016.018-BR,    RM.804016.021-BR,

RM.804016.024-BR, and RM.804016.025-BR. R.C. 1322.01(GG).

161.    R.C. 1322.40(B) prohibits all registrants under R.C. 1322 from making "omissions

of statements required by state or federal law," including RESPA, Regulation X, and the

Interpretations.

162.    R.C. 1322.45(A) requires all registrants under R.C. 1322 to comply with all "duties

imposed by other statutes or common law," which necessarily includes those imposed by RESPA,

Regulation X, and the Interpretations.   In addition, R.C. 1322.45(A)(2) requires all registrants

under R.C. 1322 to "follow reasonable and lawful instructions from [a] buyer."

163.    A registrant, licensee, or person required to be registered or licensed under R.C.

1322 cannot waive or modify its duties under R.C. 1322.45(A). R.C. 1322.45(C).

164.    As set forth above, RESPA, Regulation X, and the Interpretations required PHH to

respond to borrower Inquires regarding the identity and contact information of the owner or

assignee of their loans by providing the borrower with the *actual* owner or assignee of the loan

(*e.g.*, the name of the Trust itself, and not just the "trustee" of the Trust).  *E.g.*, 12 C.F.R. § 1024.36;

12 U.S.C. § 2605(k)(1).  Since R.C. 1322.40(B) and R.C. 1322.45(A) incorporate the requirements

of RESPA, Regulation X, and the Interpretations, PHH also had a duty, under Ohio law, to provide this information in response to Plaintiff's and Ohio Inquiry Subclass members' Inquiries.

165.    Plaintiff and Ohio Inquiry Subclass members submitted Inquiries to PHH at the Designated Address.

166.    Plaintiff's and Ohio Inquiry Subclass members' Inquiries requested specific information related to their loans, specifically, the identity and contact information of the owner or assignee of their loans from PHH, as contemplated by, *inter alia*, 12 C.F.R. § 1024.36 and/or 12 U.S.C. § 2605(k)(1).  As such, Plaintiff and Ohio Inquiry Subclass members provided PHH with "reasonable and lawful instructions" to identify the owner or assignee of their loans. R.C. 1322.45(A)(2).

167.    PHH failed to properly, or otherwise fully, identify the owner of Plaintiff's and Ohio Inquiry Subclass members' loans in response to the Inquiries as expressly required by RESPA, Regulation X, and the Interpretations. Specifically, in response to each of the Inquiries, PHH provided the name and contact information for the entity that acted as the "trustee" of the Trust that was the *actual* owner or assignee of the loan, but failed to identify the Trust itself by name.

168.    PHH failed to provide an adequate written response to Plaintiff's and Ohio Inquiry Subclass members' Inquiries within ten (10) business days of receipt at the Designated Address— as required by 12 C.F.R. § 1024.36(d) and 12 U.S.C. § 2605(k)(1).

169.    PHH's failure to provide appropriate responses to Plaintiff's and Ohio Inquiry Subclass members' Inquiries within ten (10) business days of receipt constitutes a clear violation of the requirements of 12 C.F.R. § 1024.36 and 12 U.S.C. § 2605(k)(1). Since R.C. 1322.40(B) and  R.C.  1322.45(A)  incorporate  the  requirements  of  RESPA,  Regulation  X,  and  the

Interpretations, PHH's failure to provide appropriate responses to Plaintiff's and Ohio Inquiry Subclass members' Inquiries also violated R.C. 1322.40(B) and R.C. 1322.45(A). PHH also violated R.C. 1322.45(A)(2) because it failed to "follow [the] reasonable and lawful instructions from" Plaintiff and Ohio Inquiry Subclass members to identify the owner or assignee of their loans.

170.    Plaintiff and Ohio Inquiry Subclass members were harmed because they incurred the expenses associated with sending Inquiries—such as their time, postage, etc.—but did not receive the information or responses to which they were legally entitled, pursuant to RESPA, Regulation X, and, by extension, R.C. 1322.40(B) and R.C. 1322.45(A).

171.    Plaintiff and some members of the Ohio Inquiry Subclass (*i.e.*, Ohio Inquiry Subclass members who are also NOE Subclass members) were further harmed by PHH's failure to appropriately respond to the Inquiries because they each incurred costs relative to sending an NOE that they would not otherwise have incurred—such as postage and attorneys' fees—had PHH properly responded to their Inquiries.

172.    PHH is evading its legal obligations and has effectively stripped borrowers of their right to submit Inquiries within and subject to the protective framework of RESPA (and, by extension, the RMLA), as PHH engaged in a pattern and practice of behavior of providing incomplete, evasive, or inaccurate information in response to such Inquiries.

173.    PHH's actions are in continuation of a pattern and practice of behavior in conscious disregard of the Plaintiff's and Ohio Inquiry Subclass members' rights.

174.    As a result of PHH's conduct, PHH is liable to Plaintiff and Ohio Inquiry Subclass members for actual damages, as further described, *supra*, reasonable attorneys' fees and costs incurred in connection with this action, and punitive damages. R.C. 1322.45(D); R.C. 1322.52.

175.    Moreover, pursuant to R.C. 1322.52(B)(1), Plaintiff, individually, and on behalf of the Ohio Inquiry Subclass, seeks injunctive relief requiring PHH to respond to future borrower Inquiries by identifying the *actual* owner or assignee of the loan (*e.g.*, the name of the Trust itself, and not just the "trustee" of the Trust).  Plaintiff's request for injunctive relief is appropriate for the reasons set forth below.

176.    Plaintiff's and Ohio Inquiry Subclass members' loans are currently serviced by PHH, and will continue to be serviced by PHH in the future.

177.    In the future, Plaintiff and Ohio Inquiry Subclass members intend to submit Inquiries to PHH regarding the identity and contact information of the owners or assignees of their loans.

178.    As described herein, PHH has, and will continue to, respond to borrower Inquiries regarding the identity and contact information of the owner or assignee of a given loan by providing the borrower with the name and contact information for the entity that acts as the "trustee" of the Trust that is the *actual* owner or assignee of the loan, instead of identifying the Trust itself by name.

179.    Accordingly, in connection with the future Inquiries that they intend to submit to PHH, Plaintiff and members of the Ohio Inquiry Subclass will *not* receive the information to which they are entitled under RESPA (and, by extension, the RMLA), due to PHH's pattern and practice of behavior of providing incomplete, evasive, or inaccurate information in response to such Inquiries.

180.    Therefore, the Court should enter an injunctive order requiring PHH to respond to future borrower Inquiries by identifying the *actual* owner or assignee of the loan (*e.g.*, the name of the Trust itself, and not just the "trustee" of the Trust).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Michael F. Abfall, individually, and on behalf of all others similarly situated, prays for an Order as follows:

A.  Finding that this action satisfies the prerequisites for maintenance as a class action and certifying the Late Fee Class, the FDCPA Subclass, the Ohio Late Fee Subclass, the RESPA Class, the Ohio Inquiry Subclass, and the NOE Subclass, each as defined, *supra*;

B.  Designating Plaintiff as representative of the Late Fee Class, the FDCPA Subclass, the Ohio Late Fee Subclass, the RESPA Class, the Ohio Inquiry Subclass, and the NOE Subclass, and his undersigned counsel as Class Counsel;

C.  Entering judgment in favor of Plaintiff, the Late Fee Class, the FDCPA Subclass, the Ohio Late Fee Subclass, the RESPA Class, the Ohio Inquiry Subclass, and the NOE Subclass and against Defendant;

D.  Awarding Plaintiff, the Late Fee Class, the FDCPA Subclass, the Ohio Late Fee Subclass, the RESPA Class, the Ohio Inquiry Subclass, and the NOE Subclass their actual damages;

E.  Awarding Plaintiff and the FDCPA Subclass their statutory damages as allowed under the FDCPA;

F.  Awarding Plaintiff, the Ohio Late Fee Subclass, and the Ohio Inquiry Subclass punitive damages as allowed under the RMLA;

G.  Awarding Plaintiff, the RESPA Class, and the NOE Subclass their statutory damages as allowed under RESPA;

H.  Granting injunctive relief enjoining Defendant from charging Improper Late Fees in the future, and requiring Defendant to respond to future borrower Inquiries by identifying the *actual* owner or assignee of the loan (*e.g.*, the name of the Trust itself, and not just the "trustee" of the Trust);

I.  Awarding Plaintiff, the Late Fee Class, the FDCPA Subclass, the Ohio Late Fee Subclass, the RESPA Class, the Ohio Inquiry Subclass, and the NOE Subclass attorneys' fees and costs, including interest thereon, as allowed or required by law; and

J.  Granting all such further and other relief as this Court deems just and appropriate.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable.


Dated: May 19, 2021                         Respectfully submitted,

                                            */s/ Marc E. Dann*
                                            Marc E. Dann (Ohio Bar No. 0039425)
                                            Daniel M. Solar (Ohio Bar No. 0085632)
                                            Brian D. Flick (Ohio Bar No. 0081605)
                                            DANNLAW
                                            P.O. Box 6031040
                                            Cleveland, OH 44103
                                            Telephone: (216) 373-0539
                                            notices@dannlaw.com

                                            Thomas A. Zimmerman, Jr. (*pro hac vice* anticipated)
                                            tom@attorneyzim.com
                                            Matthew C. De Re (*pro hac vice* anticipated)
                                            matt@attorneyzim.com
                                            ZIMMERMAN LAW OFFICES, P.C.
                                            77 W. Washington Street, Suite 1220
                                            Chicago, Illinois 60602
                                            Telephone: (312) 440-0020

                                            *Co-Counsel for Plaintiff Michael F. Abfall and the Putative Classes*